IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MATTHEW N.,

        Plaintiff,

    v.                                Civil Action No.
                                          8:22-CV-0117 (DEP)

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

        Defendant.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF

ANDERSON LAMB & ASSOCS. P.C.    BRYDEN F. DOW, ESQ.
P.O. Box 1624                           ARTHUR P. ANDERSON, ESQ.
Burlington, VT 05402-1624

FOR DEFENDANT

SOCIAL SECURITY ADMIN.          HUGH DUN RAPPAPORT, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C.

§§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on March 9, 2023, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

    3)     The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

*[signature]*
David E. Peebles
U.S. Magistrate Judge

Dated:     March 20, 2023
             Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MATTHEW N.,
                                              Plaintiff,

-v-                                           8:22-CV-117

COMMISSIONER OF SOCIAL SECURITY,

                                              Defendant.
------------------------------------------------------------x
```

### DECISION TRANSCRIPT
### BEFORE THE HONORABLE DAVID E. PEEBLES
March 9, 2023
100 South Clinton Street, Syracuse, New York


For the Plaintiff:

    BRYDEN F. DOW LAW OFFICE
    1353 Teer Road
    West Rutland, Vermont 05777
    BY:  **BRYDEN F. DOW, ESQ.**

For the Defendant:

    SOCIAL SECURITY ADMINISTRATION
    J.F.K. Federal Building, Room 625
    15 New Sudbury Street
    Boston, Massachusetts 02203
    BY:  **HUGH RAPPAPORT, ESQ.**


*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1           (The Court and all counsel present by telephone.
2   Time noted:  2:27 p.m.)
3           THE COURT:  Let me express my thanks first to counsel
4   for excellent presentations.  I appreciate Mr. Dow was
5   disadvantaged in his oral presentations, but I can assure you
6   that I've read the briefs carefully, I've read the -- all of the
7   medical opinions in the record, I've reviewed treatment notes,
8   including of Dr. Scovner, and feel that I am in a good position
9   to issue a decision.
10          Plaintiff has commenced this proceeding pursuant to
11  42, United States Code, Section 405(g) to challenge a denial of
12  plaintiff's application for Title II benefits.  The background
13  is as follows:  Plaintiff was born in January of 1984 and is
14  39 years of age.  He was 24 years old at the alleged onset of
15  disability on April 20, 2008.  He stands 5'8" in weight and
16  weighs approximately 142 pounds.  Plaintiff did live in Benson,
17  Vermont, but apparently has crossed into New York and now
18  resides in Schroon Lake in Essex County, New York.  Plaintiff
19  did not graduate high school.  He dropped out after the 10th
20  grade and did not achieve a GED.
21          Plaintiff stopped working in April of 2004.
22  According to him, it was due to being harassed by a coworker.
23  While working, he was a dishwasher and in manufacturing and
24  production.
25          Plaintiff has both physical and mental impairments.

1  The focus of this hearing and plaintiff's challenge, of course,
2  is on his mental condition.
3          Physically, he has compression fractures at L2 and
4  T4-T7, a history of seizure disorder, shoulder and knee pain.
5          Mentally, plaintiff suffers from depression, which
6  has been variously diagnosed, including as a depressive disorder
7  and major depressive disorder, anxiety disorder, posttraumatic
8  stress disorder or PTSD, and substance abuse disorder.
9  Plaintiff has treated primarily with Dr. Michael Scovner who has
10 treated the plaintiff since childhood.  He also has seen
11 licensed psychologist Jacquelyn Bode, MA or MED, from
12 February 3, 2014, on, as well as Licensed Clinical Social Worker
13 Trisha Meyer, who he began seeing and receiving treatment from
14 in June of 2020.
15         This case has a long and tortured procedural history,
16 and an interesting one.  Plaintiff applied for Title II benefits
17 on April 3, 2012, and Title XVI benefits on April 4, 2012,
18 alleging an onset date of April 20, 1980.  Plaintiff complained
19 of -- in support of his application and his adult function
20 report claims -- adult disability report, claims compression
21 fractures in back, social anxiety, and depression as a basis for
22 his disability applications.  There have been two prior adverse
23 determinations by Administrative Law Judges hearing plaintiff's
24 case on June 25, 2014, and December 20, 2018, both by
25 Administrative Law Judge Thomas Merrill.  The case has been

1  appealed into the District of Vermont, U.S. District Court
2  twice, and remanded one time on consent.  The remands occurred
3  on April -- I'm sorry, February 8, 2018 -- 2017, and March 10,
4  2020.  The matter was remanded on May 1, 2020, by the Social
5  Security Administration Appeals Council.  The basis for the
6  remand is not germane to the proceeding today.  As a result of
7  that remand, plaintiff's Title II and Title XVI applications
8  were consolidated.  A hearing was conducted on July 14, 2021, by
9  Administrative Law Judge Tracy LaChance.  A second hearing was
10 conducted by ALJ LaChance on August 18, 2021, at which
11 Dr. Sharon Kahn testified as a medical expert retained by the
12 agency.
13         On October 14, 2021, ALJ LaChance issued an
14 unfavorable decision.  This proceeding was commenced on
15 February 2nd -- February 7, 2022, and is timely because the
16 determination after remand became a final decision of the agency
17 60 days after the issuance and then plaintiff had 60 days from
18 that point to commence this proceeding pursuant to 20 C.F.R.
19 Section 404.984(c) and (d), and also under *Brown v.*
20 *Commissioner of Social Security,* 2020 WL 5579836 from the
21 Eastern District of Michigan, February 24, 2020.
22         In her decision, ALJ LaChance applied the familiar
23 five-step sequential test for determining disability, although
24 was not required to go through all five of the sequential steps.
25         ALJ LaChance first noted that plaintiff's last date

1  of insured status was December 31, 2010.  She noted that
2  plaintiff had not engaged in substantial gainful activity since
3  the alleged onset date of April 20, 2008.  I think I misspoke
4  when I said 1980.  I had juxtaposed those dates.  In any event,
5  she did note that plaintiff had some work in 2019 and 2020, and
6  also earned some income working for DoorDash.
7         At step two, the Administrative Law Judge separated
8  the case into two distinct periods.  She found that prior to
9  April 4, 2012, the date of application for Title XVI benefits,
10 plaintiff did suffer from severe impairments, including a
11 seizure disorder -- I have too many papers in front of me --
12 anxiety disorder, and depressive disorder, but found that
13 plaintiff did not have an impairment or combination of
14 impairments that significantly limited or would be expected to
15 significantly limit the ability to perform basic work-related
16 activities for 12 consecutive months and, therefore, concluded
17 that plaintiff was not disabled prior to April 4, 2012.
18         Proceeding to address the period following April 4,
19 2012, ALJ LaChance concluded that plaintiff does suffer from
20 severe impairments, including status post compression fractures
21 of L2 and T4-T7, anxiety disorder, major depressive disorder,
22 posttraumatic stress disorder, and substance abuse disorder.
23         The Administrative Law Judge next considered at step
24 three whether plaintiff's conditions met or equaled at the
25 relevant times any of the listed presumptively disabling

1  conditions set forth in the Commissioner's regulations and
2  concluded that they did and that plaintiff was therefore
3  disabled effective the -- beginning April 4, 2012, and entitled
4  to the Title XVI benefits for which he applied.
5          The Court's function in this case, as the parties
6  know, is to determine whether correct legal principles were
7  applied and substantial evidence supports the ALJ's
8  determination.  It's an extremely deferential standard, more
9  deferential than the clearly -- more stringent, I should say,
10 than the clearly erroneous standard that we as lawyers are
11 familiar with.  Under the substantial evidence standard, the --
12 under the substantial evidence standard, the Court must
13 determine whether there is sufficient evidence that would allow
14 a reasonable mind to accept as adequate a conclusion.  The
15 standard also means that once a fact is found by an
16 Administrative Law Judge, the fact can be rejected only if a
17 reasonable factfinder would have to conclude otherwise, *Brault*
18 *v. Social Security Administration Commissioner*, 683 F.3d 443,
19 from the Second Circuit, 2012.  It was also reiterated later by
20 the Second Circuit and fairly recently in *Schillo v. Kijakazi*,
21 31 F.4d 64, from the Second Circuit, 2022.
22         In this case, again, an unusual posture because the
23 plaintiff was found disabled as of April 4, 2012, the key period
24 in this case is April 20, 2008, the alleged onset date, to the
25 date of last insured of December 31, 2010, a daunting task some

1   12 years later to determine plaintiff's condition prior to that
2   date.  The issue is exclusively focused on plaintiff's mental
3   impairments and whether they cause work preclusive limitations.
4   The focus of the mental aspect of this case is upon several
5   prior administrative determinations and medical opinions in the
6   record, including from Dr. Michael Scovner, the treating source
7   who we mentioned earlier, Jacquelyn Bode, a treating
8   psychologist, and therapist Trisha Meyer.  The ALJ gave each of
9   those medical opinions little weight when they addressed the
10  period prior to the DLI.  There's also the testimony of
11  Dr. Sharon Kahn, which also was given little weight as it
12  relates to that prior period, and the state agency
13  determinations by Dr. Edward Hurley and Dr. Thomas Reilly whose
14  opinions were given great weight.
15           In this case, the regulations that were in effect
16  prior to March of 2017 apply, including the treating source rule
17  under which the opinion of a treating physician regarding the
18  nature and severity of an impairment is entitled to considerable
19  deference provided that it is supported by medically acceptable
20  clinical and laboratory diagnostic techniques and is not
21  inconsistent with other substantial evidence.  Treating source
22  opinions are not, however, controlling if they are contrary to
23  other substantial evidence in the record, including the opinions
24  of other medical experts, *Halloran v. Barnhart*, 362 F.3d 28 at
25  32, Second Circuit, 2004.  Where the record concludes

1    contradictory medical evidence, the weighing of those opinions
2    and the resolution is properly entrusted to the Commissioner
3    under both *Burgess v. Astrue*, 537 F.3d 117, Second Circuit,
4    2008, and *Veino*, the cite of which I don't have at the moment,
5    but a Second Circuit decision nonetheless.
6              So in this case, as indicated, there are several
7    medical source statements in the record.  Dr. Scovner, a medical
8    source, gave an opinion that is not dated, but was faxed on
9    May 2, 2014.  It appears at 594 to 600 and addresses both the
10   physical and mental condition of the plaintiff.  That opinion
11   states that plaintiff has no useful ability to function in three
12   areas, including complete a normal workday and workweek without
13   interruptions, interacting appropriately with the general
14   public, and using public transportation.  He also opines that
15   plaintiff would be absent more than four days per month.  The
16   interesting part of that statement is that the doctor is asked
17   the following:  To be eligible for insurance benefits, the
18   evidence must establish that your patient's ability to work
19   full-time has been impaired prior to December 31, 2010.  Is this
20   reasonable?  The box is checked yes.
21             Number one, as the Commissioner points out, I'm not
22   sure that that necessarily means that plaintiff functionally is
23   disabled and unable to perform any work function prior to
24   December 31, 2010.  It doesn't indicate to what degree the
25   condition must be impaired and I question whether it being

1    reasonable constitutes an opinion that, in fact, plaintiff was
2    impaired in his ability to perform work on a full-time basis
3    prior to the DLI.  That opinion was given little weight, as I
4    previously indicated.
5              There's no question that, as the Commissioner
6    concedes, the Administrative Law Judge in discounting that
7    opinion did not discuss the relevant factors, the so-called
8    *Burgess* factors.  However, as the Commissioner also notes, the
9    Court, nonetheless, can find that procedural error harmless if a
10   searching review of the record reflects that there was no
11   violation of the treating source rule, *Estrella v. Berryhill*,
12   925 F.3d 90, Second Circuit from 2019.
13             In this case, I find that the treating source rule
14   was not violated.  As the Administrative Law Judge noted on page
15   1729, Dr. Scovner's treatment notes are completely devoid of any
16   discussion of anxiety during the relevant period.  The treatment
17   notes prior to the DLI are found at 404 to 426 of the record.  I
18   reviewed those notes carefully and I did not find -- I did find
19   that that is, in fact, substantiated.  The only references I
20   could find to depression and anxiety predated the alleged onset
21   date.
22             At page 416, there is a mention of plaintiff being
23   there to follow-up for anxiety, that's October 6, 2006.  At page
24   417, there's a notation from November 15, 2006, that plaintiff
25   also suffers from depression.  On page 420, from October 5,

1    2006, it was noted plaintiff was supposed to take Citalopram,
2    but has not been taking it, and he does not take someone else's
3    Xanax as needed -- I'm sorry, does take someone else's Xanax as
4    needed, and it was noted that he was incredibly anxious.  On
5    page 421, October 5, 2006, it was noted plaintiff was supposed
6    to start on an antidepressant, but he never actually did it.
7    There are no -- and there's a notation of acute anxiety from
8    June 8, 2006, on page 424.  Conspicuously absent, however, are
9    any similar notations during the relevant period from onset to
10   DLI in Dr. Scovner's records.  So although I think the ALJ
11   probably could have made a fuller discussion of Dr. Scovner's
12   opinion, I don't find any violation of the treating source rule.
13           Ms. Bode issued an opinion on May 12, 2014, that is
14   also similarly limiting as Dr. Scovner's, finding no useful
15   ability to function in three areas, the same three as -- I'm
16   sorry, in some areas.  She is listed as an MED, a licensed
17   psychologist with a Master's.  It was unclear to me whether she
18   is an acceptable medical source under 20 C.F.R. Section
19   404.1502(a).  An acceptable medical source can include a
20   licensed psychologist, which includes a licensed or certified
21   psychologist at an independent practice level.  According to
22   plaintiff's counsel, Ms. Bode practices in Vermont and is
23   licensed, and so I, like the Commissioner, have found or
24   assumed, for the sake of argument, that Ms. Bode does qualify as
25   a treating source.

1              Nonetheless, the ALJ properly rejected Ms. Bode's
2    opinions which found no useful ability to function in
3    maintaining regular attendance and to be punctual within
4    customary tolerances.  Her opinion, by the way, is at 612 to 617
5    of the record.  Ms. Bode also opines, like Dr. Scovner, that it
6    was reasonable to find that the evidence established that
7    plaintiff's ability to perform work full-time was impaired prior
8    to December 31, 2010, but I have the same problems with that
9    statement as I did with regard to Dr. Scovner's.  Ms. Bode did
10   not treat the plaintiff until February of 2014, more than three
11   years after the DLI.  It's unclear what evidence she relied on
12   to give her opinion as to plaintiff's condition prior to the
13   DLI.  The -- both Dr. Scovner and Ms. Bode's opinions are on
14   checkbox forms with little explanation.
15             I know that plaintiff has argued that this is not a
16   sufficient reason to reject the opinions, citing *Colgan v.*
17   *Kijakazi*, 22 F.4d 353, from January 3, 2022, Second Circuit.
18   And the distinction between that case and the current case is
19   that in that case, the medical opinion from Dr. Ward given on
20   that checkbox form was adequately explained when considering the
21   abundant -- voluminous it was described as -- treatment notes
22   gathered by Dr. Ward over nearly three years of clinical
23   treatment.
24             In this case, there are no treatment records from Ms.
25   Bode that would explain her limiting opinions.  And Dr.

1   Scovner's, as we previously discussed, treatment notes from the
2   relevant period are completely silent regarding plaintiff's
3   mental health conditions of depression and anxiety.  So this
4   case is more akin to *Schillo*, a case I cited earlier from the
5   Second Circuit, which involved analogous facts.  Once again,
6   although the *Burgess* factors were not specifically addressed
7   with regard to Ms. Bode's opinion, I don't find that the
8   treating source rule was violated.
9              With regard to Trisha Meyer, plaintiff's therapist,
10  Ms. Meyer gave an opinion dated May 19, 2021.  It -- I'm sorry,
11  May 17th.  It's hard to read her writing.  It appears at 2799 to
12  2804.  It was discussed by the Administrative Law Judge that --
13  even though Ms. Meyer was not an acceptable medical source, and
14  for the same reasons that are cited, I believe that the
15  explanation provided for rejecting that opinion is appropriate.
16  This case does not involve an uncontested/unopposed medical
17  opinion or group of medical opinions because there are
18  countering medical opinions from Dr. Hurley and Dr. Reilly to
19  which the Administrative Law Judge gave great weight, so the
20  overwhelmingly compelling standard did not come into play in
21  this case.
22             The Administrative Law Judge explained why she
23  credited those opinions, primarily because when they reviewed
24  Dr. Scovner's notes, they were completely silent during the
25  relevant period.  Also, plaintiff denied taking prescription

1  medications or prescribed medications during the period in
2  question and did not follow advice that he received in an
3  emergency room to stop smoking marijuana and to seek treatment.
4        The last opinion of record is testimony of Dr. Sharon
5  Kahn from 1787 to 1811 in the Administrative Transcript.  That
6  was given little weight.  As it relates to the period from
7  April 2008 to the DLI, the focus of that clearly was on 2018.  I
8  found Dr. Kahn's opinion to be vague and ambiguous when it comes
9  to her opinion of whether plaintiff was disabled prior to the
10 DLI.  I saw at page 1801 a reference to it as it's possible that
11 she could have met -- he could have met listings 1206 -- 1204
12 and 1206 at the time.  There is also -- it appears that she was
13 saying that working backwards, he could've equaled some of the
14 listings cited prior to the DLI.  I don't find that opinion to
15 be hard and fast, but in any event, the Administrative Law
16 Judge, to the extent that it could be considered as opining,
17 plaintiff suffered from those limitations prior to the DLI, but
18 they were -- the opinion was properly rejected and the
19 explanation was explained.
20       The bottom line is that the plaintiff had a burden.
21 The Title II application was disposed of at step two.  It was
22 the plaintiff's burden to show a significant limitation on
23 work-related functions that could be expected to last 12
24 consecutive months or more.  Plaintiff did not carry that
25 burden, so I find that the resulting determination by the

1  Commissioner is supported by substantial evidence and results
2  from the application of correct legal principles.  I will
3  therefore grant judgment on the pleadings to the defendant and
4  order dismissal of plaintiff's complaint.
5          Thank you both for excellent presentations.  I hope
6  you have a good afternoon.
7          MR. DOW:  Okay.  Thank you, your Honor.
8          MR. RAPPAPORT:  Thank you, your Honor.
9          (Time noted:  2:57 p.m.)

```
 1
 2
 3
 4                CERTIFICATE OF OFFICIAL REPORTER
 5
 6
 7           I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,
 8   NYRCR, Official U.S. Court Reporter, in and for the United
 9   States District Court for the Northern District of New York, DO
10   HEREBY CERTIFY that pursuant to Section 753, Title 28, United
11   States Code, that the foregoing is a true and correct transcript
12   of the stenographically reported proceedings held in the
13   above-entitled matter and that the transcript page format is in
14   conformance with the regulations of the Judicial Conference of
15   the United States.
16
17             Dated this 15th day of March, 2023.
18
19             s/ Hannah F. Cavanaugh_____
20             HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR
21             Official U.S. Court Reporter
22
23
24
25
```